UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LESLIE J. GAINES, JR.,<br><br>Plaintiff,<br><br>vs.<br><br>STU SHERMAN (Warden), *et al.*,<br><br>Defendants. | Case No. 1:15-cv-01533-RRB<br><br>**THIRD DISMISSAL ORDER** |

Plaintiff Leslie J. Gaines, Jr., a California state prisoner appearing *pro se* and i*n*

*forma pauperis*, has filed his Second Amended Complaint under the Civil Rights Act (42

U.S.C. § 1983) against various officials of the California Department of Corrections and

Rehabilitation.[1]   Gaines' Complaint arises out of his incarceration at the California

Substance Abuse Treatment Facility, Corcoran ("CSATF") and Kern Valley State Prison

("KVSP"), where he is currently incarcerated.

---

[1]  In addition to CSATF Warden Sherman, Gaines names as Defendants in his Second Amended Complaint:  Dr. Bonilla (SVSP Psychologist); Charles D. Lee (SVSP Chief Medical Officer); Kipps (CSP LVN); Hurtz (CSP Psychologist); Metts (CSP Primary Care Physician); Vella (CSP Correctional Counselor II); Reynoso (CSP Correctional Officer); Beasly (CSP Correctional Officer); D. Lopez (CSP Correctional Lt.); Curtis (CSP Correctional Lt.); D. Stohl (CSP Correctional Lt.); Reynoso  (CSP Correctional Lt.); Peterson (CSP Correctional Counselor I); M. Leflar (CSP Correctional Officer); D. Pelayo (CSP Correctional Officer); A. Sami (CSP LVN); J. Rising (CSP Correctional Officer) E. Rivera (CSP Correctional Officer); Renning (CSP Correctional Officer); L. Lorenzo (CSP Correctional Officer); Castelle (CSP Correctional Sgt.); M. Hacker (CSP Correctional Capt.); Mueller (CSP Correctional Officer); Sanchez (CSP Correctional Officer); Kuffeeh (CSP Correctional Officer); Arreazolla (CSP Correctional Officer); Doering (CSP Correctional Officer); Davidson (CSP LVN); Boyd (CSP Correctional Officer); Flemming (CSP Correctional Officer); Dunning (CSP Correctional Officer); Boliva (CSP LVN-MTA); Papsqualli (CSP LVN); Ward (CSP Correctional Lt.); Talli (CSP LVN); Oberlander (CSP Pyschologist); Hernandez (Correctional Counselor I); C. Cryer (Chief Medical Officer); C.M. Raymos (Appeals Coordinator); and Does 1–5 (American Disability Act Board Members); and Does 1-4 (Mental Health Staff).

## I.      SCREENING REQUIREMENT

This Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.[2]   The court having set forth that standard in its initial Dismissal Order does not repeat them herein.

## II.     BACKGROUND/GRAVAMEN OF SECOND AMENDED COMPLAINT

In screening the Complaint the Court dismissed Gaines' claim under the Religious Land Use and Institutionalized Persons Act without leave to amend.[3]  In addition, the Court provided Gaines with explicit instructions with respect to the format and facts necessary to be alleged in amending his complaint as to the remaining claims.[4]  Because Gaines disregarded the explicit instructions given by the Court in the first Dismissal Order, the Court summarily dismissed the First Amended Complaint.[5]

The 69-page, 211-paragraph Second Amended Complaint ("SAC") alleges eight causes of action.  Paragraphs 4 through 44, inclusive, identify the Defendants.   In paragraph 45  Gaines attempts to assert that to the extent the acts complained of occurred prior to September 15, 2011, the limitations period was tolled.  In paragraph 46 Gaines asserts he is classified as mobility impaired under the Americans with Disabilities Act. Paragraphs 47 through 168, inclusive, set forth the factual background.  Paragraphs 169 through 185, inclusive, allege facts pertaining to the Defendants' intent.  Paragraphs 186

---

[2]  28 U.S.C. § 1915A(a).

[3]  Although the Court granted Gaines leave to amend with respect to his claim under the California Unruh Act (Cal. Civil Code § 51), Gaines has not raised that claim in his Second Amended Complaint.  Consequently, the Court assumes Gaines has abandoned that claim.

[4]  Docket 15.

[5]  Docket 19.

through 194, inclusive, state facts concerning Gaines' cruel and unusual punishment claim. Paragraph 195 appears to set forth a history of Gaines' attempts to satisfy his internal administrative remedies.

Based upon those facts Gaines asserts eight separate causes of action against all of the Defendants collectively.

First Cause of Action.  Contends that the actions of the Defendants violated his First Amendment right to file grievances.

Second Cause of Action.   Alleges that an attack on him by another inmate, allegedly orchestrated by the Defendants, constituted a retaliation for his exercise of his First Amendment rights to file grievances.

Third Cause of Action.  Alleges that his denial approved medical appliances were denied to him in retaliation for filing grievances, constituted cruel and unusual punishment, and deliberate indifference.

Fourth Cause of Action.  Alleges that in orchestrating an assault on him by another inmate, Defendants violated Gaines' Eighth Amendment right to be free of cruel and unusual punishment.

Fifth Cause of Action.  Alleges that his Eighth and Fourteenth Amendment rights were violating by changing his diagnosis and promulgating information contained in his mental health records to non-medical staff allegedly for the purpose of having Gaines killed.

Sixth Cause of Action.  Alleges that Defendants maliciously destroyed his personal property.

Seventh Cause of Action.  Alleges that by refusing to properly treat his mental health conditions Defendants were deliberately indifferent to Gaines' serious medical needs.

Eighth Cause of Action.  Alleges that a grand conspiracy existed among the Defendants to deprive Gaines of his constitutionally protected rights.

Attached to the SAC are twelve exhibits.  These include a copy of the August 2015 calendar with handwritten notations (Exhibit A); a partial copy of an CDCR 602 appeal regarding property damage (Exhibit B); two canteen receipts (Exhibit C); CSP Corcoran mail history (Exhibit D); Additional mail history (Exhibit E); copies of calendars encompassing January through August 2014 (Exhibit F); copy of May 2015 calendar (Exhibit G); CDCR 602-HC dated January 4, 2016 (Exhibit H); excerpt from RVR (Exhibit I); one-page excerpt from an Inmate/Parolee Request for Interview or Service (Exhibit J); and copies of a CDCR-602 submitted by Gaines on August 13, 2015 (Exhibit K).

Gaines seeks:  (1) a declaration that the Defendants violated his rights; (2) a preliminary and permanent injunction; (3) replacement of lost property; (4) replace lost credits resulting from an RVR disciplinary action; (5) enjoin the Defendants from taking his cane and medical appliances; (6) compensatory and punitive damages of $50,000 from each defendant; and (7) punitive damages in the amount of $25,000 in punitive damages.

## III.    DISCUSSION

Initially, the Court notes that the SAC is replete with numerous allegations of various allegedly improper acts by one or more of the Defendants totally unrelated to any of the eight claims asserted.  This, which requires the Court to "separate the wheat from the chaff," renders the screening process more difficult.  The Court's extensive review of these

allegations reveals that they, whether viewed individually or collectively, do not give rise

any  claims cognizable in this Court.

Gaines SAC also suffers from several procedural deficiencies.  The Court initially

addresses the general deficiencies followed by analysis of each cause of action.

<u>Information and Belief</u>.  Numerous allegations contained in the Second Amended

Complaint are based upon a general conclusory statement of "information and belief"

unsupported by specific factual allegations on which that "information and belief" is based.

Such allegations are insufficient.[6]  This is particularly true with respect to those allegations,

such as the alleged existence of a conspiracy (Gaines' Eighth Cause of Action discussed

further below), that are inherently implausible on their face.[7]

<u>Exhaustion</u>.    Prior  to  seeking  judicial  relief,  a  prisoner  must  exhaust  all

administrative remedies as may be available,[8] irrespective of whether those administrative

remedies  provide  for  monetary  relief.[9]    The  Supreme  Court  has  stated:   "Although  not

jurisdictional,  exhaustion  is  nonetheless  mandatory,  and  there  is  no  discretion  to  excuse

it."[10]   "Proper  exhaustion"  means  "complet[ing]  the  administrative  review  process  in

---

[6] *Blantz v. Cal. Dep't of Corr.*, 727 F.3d 917, 926–27 (9th Cir. 2013) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 696 (2009)).

[7] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (dismissing a case where the plaintiffs' allegations had "not nudged their claims across the line from conceivable to plausible").

[8] 42 U.S.C. § 1997e(a); *Booth v. Churner*, 532 U.S. 731, 741 (2001) (exhaustion of administrative remedies must be completed before filing suit).

[9] *See Booth*, 532 U.S. at 734.

[10] *Porter v. Nussle*, 534 U.S. 516, 524 (2002).

accordance with the applicable rules,"[11] including "compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."[12]  Moreover, a prisoner must exhaust his or her administrative remedies prior to filing suit, not during the pendency of the suit.[13]

Exhaustion is an affirmative defense to be raised and proven by the defense.[14]  A defendant has the initial burden to prove "that a grievance procedure existed, and the prisoner did not exhaust that available remedy."[15]  Once a defendant has met this burden, the burden shifts to the plaintiff to demonstrate that the grievance procedure was inadequate, ineffective, unobtainable, unduly prolonged, inadequate, or futile.[16]  Procedurally, unless otherwise ordered by the Court, a prisoner is not required to affirmatively plead exhaustion.  Because "[e]xhaustion should be decided, if feasible, early in the proceedings before reaching the merits of a prisoner's claim,"[17] in the interests of judicial efficiency this Court requires prisoners to affirmative plead the facts establishing exhaustion.

---

[11]  *Jones v. Bock,* 549 U.S. 199, 218 (2007).

[12]  *Woodford v. Ngo*, 548 U.S. 81, 91 (2006).

[13]  42 U.S.C. § 1997e(a) ("[n]o action shall be brought . . . until [the prisoner's] administrative remedies . . . are exhausted."); *see Ngo*, 548 U.S. at 85, 93–95.

[14]  *Jones*, 549 U.S. at 212–17; *Albino v. Baca*, 747 F3d 1162, 1166, 1168 (9th Cir. 2014 (en banc).

[15]  *Id.* at 1172.

[16]  *Id.*

[17]  *Albino*, 747 F3d at 1170.  The Ninth Circuit also noted that "if discovery is appropriate, the district court may in its discretion limit discovery to evidence concerning exhaustion, leaving to later—if it becomes necessary—discovery directed to the merits of the suit."  *Id.*

In its prior dismissal orders the Court specifically instructed Gaines to attach to the Complaint copies of all documents referred to in the Complaint. The Court also instructed Gaines that, in addition to pleading proper exhaustion, he should attach all documents evidencing such exhaustion.[18] California law provides for three levels of review,[19] the third level conducted by the Secretary of the California Department of Corrections and Rehabilitation, or by a designated representative.[20] Attached to his SAC are three CDCR 602s: Exhibit B (side 2 of a CDCR 602 referring to a property damage claim bearing a date of January 30, 2013, appearing to be addressed to the second level of review); Exhibit H (KVSP HC16036837, dated January 4, 2016, alleging a failure to establish/maintain an appropriate treatment plan denied at the third level on August 2, 2016); and Exhibit K (SATF-15-C-04167, dated August 13, 2015, alleging that Defendants D. Pelayo and M. Leflar provided an inmate with a weapon used to assault Gaines).

In the Body of his SAC, Gaines identifies 17 CDCR 602's.[21] Of these Gaines alleges that five, spanning the period June 2013 through July 2014 were destroyed by Defendant D. Stahl and the log numbers are unknown. Of the remaining 12 having log numbers as described in the SAC eight may be relevant to the issues raised herein. However, the Court's specific instructions notwithstanding, except for KVSP HC16036837, Gaines has not attached the documents establishing that he has exhausted his

---

[18]  Dockets 15, 19.

[19]  Cal. Code Regs. tit. 15, § 3084.1(b) ("Unless otherwise stated in these regulations, all appeals are subject to a third level of review, as described in section 3084.7, before administrative remedies are deemed exhausted. All lower level reviews are subject to modification at the third level of review.").

[20]  *See Brown v. Valoff*, 422 F.3d 926, 929–30 (9th Cir. 2005).

[21]  Docket 20, pp. 61–62.

administrative remedies, nor has he provided any explanation to why he could not as to several.[22]

With respect to KVSP HC16036837, final administrative review was not completed until August 2, 2016, nearly a year *after* the Complaint was filed.  Normally a prisoner must exhaust his administrative remedies prior to filing suit, not during the pendency of the suit.[23] "If, however, a plaintiff files an amended complaint adding new claims based on conduct that occurred after the filing of the initial complaint, the plaintiff need only show that the new claims were exhausted before tendering the amended complaint to the clerk for filing."[24]  Because the acts of which Gaines complains all occurred prior to the date he initially filed his Complaint, not after, that grievance does not constitute proper exhaustion.

A Court may dismiss an action on its own volition for the failure to follow a court order.[25]  Here Gaines has clearly failed to follow the Court's order regarding pleading proper exhaustion.

<u>Statute of Limitations</u>.  The Complaint is dated September 15, 2015.  In both its Dismissal Order and Second Dismissal Order the Court specifically instructed Gaines that,

---

[22] In addition to SATF-15-C-04167, it appears that at least five others more likely  than not were not fully exhausted by the date Gaines filed his Complaint, September 15, 2015. Gaines also refers to documents that were filed in connection with an earlier case filed in this Court, *Gaines v. Diaz*, 1:13-cv-01478-MJS.  In the interests of justice the Court has reviewed and takes judicial notice of the file in that case under Fed. R. Evid. 201.  As relevant to the exhaustion issue that review shows that the only grievance attached thereto concerned a Sgt. Monroy, SVSP-L-12-02046 (Exhibit G to the Amended Complaint).

[23] *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002) (per curiam).

[24] *Akhtar*, 698 F.3d at 1210 (citing *Rhodes v. Robinson*, 621 F.3d 1002, 1007 (9th Cir. 2010)).

[25] Fed. R. Civ. P. 41(b); *Yourish v. California Amplifier*, 191 F.3d 983, 986–87 (9th Cir. 1999).

to the extent his action is based upon acts occurring prior to September 15, 2011, he must set forth the specific facts that support the tolling of the limitations period.

In his Second Amended Complaint Gaines relies on the theory that, because he has alleged a conspiracy, the "last-overt-act-doctrine" marks the starting point for the limitations period.[26]   Because, as discussed below, the Court rejects Gaines conspiracy allegations, Gaines argument fails.   Accordingly, to the extent that Gaines' allegations concerning the actions of Dr. Bonilla occurring prior to September 15, 2011, they are barred by the statute of limitations.[27]

Lost Credits.  Under *Heck* an inmate may not seek damages in a § 1983 claim when establishing the basis for the claim necessarily involves demonstrating that the conviction, sentence, or length of incarceration is invalid.[28]   *Heck*, however, does not bar a § 1983 claim that "threatens  no consequence for [an inmates'] conviction or the duration of [his or her sentence.]"[29]   To the extent that Gaines seeks invalidation of his RVR conviction and restoration of his good time credits it is not within the province of this Court in a civil rights action.  Nor, because he has not pleaded he sought relief in the California Courts, is it properly before the Court as a *habeas corpus* petition under 28 U.S.C. § 2254.

The Court further notes that in dismissing the Complaint, the Court specifically instructed Gaines that if he intended to pursue this claim "he must:  (1) identify the

---

[26]  Second Amended Complaint, ¶ 45.

[27]  These allegations are encompassed by ¶¶ 47–64.  It appears that all other acts forming th basis for this action occurred after September 15, 2011.

[28]  *See Heck v. Humphrey*, 512 U.S. 477, 486–97 (1994); *see also Edwards v. Balisok*, 520 U.S. 641, 643–47 (1997) (extending the *Heck* rule to § 1983 claims that, if successful, would imply the invalidity of deprivations of good-time credits provided for by prison disciplinary proceedings).

[29]  *Muhammed v. Close*, 540 U.S. 749, 751 (2004).

Defendant(s); (2) specifically allege the punishment, if any, imposed; and (3) attach a copy of the disciplinary proceeding."[30]  Gaines has failed to comply with the Court's instructions. Consequently, that claim will be dismissed as well.

Supervisory Capacity.  The SAC names Defendants Sherman and Lee solely in their supervisory capacity.  The Supreme Court has held that "states or governmental entities that are considered 'arms of the State' for Eleventh Amendment" are not "persons" under § 1983.[31]  The Supreme Court also clarified that "a suit against a state official in his or her official capacity . . . . is no different from a suit against the state itself."[32]  Thus a suit against a state official may only be asserted against the official in his individual capacity. Thus, to the extent a plaintiff seeks monetary damages from an official acting in his or her official capacity the claim must be dismissed.  Eleventh Amendment immunity does not, however, preclude the granting of prospective relief.[33]

Accordingly, to the extent that Gaines seeks monetary damages from Defendants Sherman and Lee it must be dismissed.  To the extent that Gaines is seeking prospective relief is dependent upon whether Gaines is otherwise entitled to such relief.  As discussed

---

[30]  Docket 15, p. 13.

[31]  *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 70 (1989).

[32]  *Id.* at 71; *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (holding that an official capacity claim is simply "'another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. Dep't of Soc. Svcs. of N.Y. City*, 436 U.S. 658, 690 n.55 (1978)); *Edelman v. Jordan*, 415 U.S. 651, 663 (1974) (stating that "when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its [Eleventh Amendment] sovereign immunity from suit even though individual defendants are nominal defendants").

[33]  *Ex parte Young*, 209 U.S. 123 (1908).  The *Young* doctrine "permits federal courts to enjoin state officials to conform their conduct to requirements of federal law, notwithstanding a direct and substantial impact on the state treasury."  *Milliken v. Bradley*, 433 U.S. 267, 289 (1977).

further below, Gaines is not so entitled.   Consequently, the Complaint as against
Defendants Sherman and Lee will be dismissed in it entirety.

First Cause of Action – First Amendment (Jailhouse Lawyer Activities).

Second Cause of Action – First Amendment (Retaliation)

These claims, which are but a single claim stated in somewhat different ways,
appear to contend that in some way the actions of the Defendants were taken in retaliation
for the filing of grievances.

> Within the prison context, a viable claim of First Amendment
> retaliation entails five basic elements: (1) An assertion that a state actor took
> some adverse action against an inmate (2) because of (3) that prisoner's
> protected conduct, and that such action (4) chilled the inmate's exercise of
> his First Amendment rights, and (5) the action did not reasonably advance
> a legitimate correctional goal.[34]

Initially the Court notes that by his use of a "shotgun" approach in his First Cause
of Action  Gaines does not identify which activity of which Defendant had an adverse effect
on his First Amendment right.   Except as alleged in his Second Cause of Action, it does
not appear from the SAC that any adverse action or actions taken by which Defendant met
the foregoing standard.   Thus, standing alone, the First Cause of Action does not  state
facts sufficient to warrant the granting of any relief.

With respect to the Second Cause of Action Gaines contends that the assault
alleged in the Fourth Cause of Action was instigated by the Defendants in retaliation for
the filing of grievances.   Therefore, because this Cause of Action stands or falls on the
Fourth Cause of Action, it fails for the same reason the Fourth Cause of Action fails.

---

[34] *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005) (applied in *Brodheim v. Cry*, 584 F.3d 1262, 1269–72 (9th Cir. 2009)).

<u>Third Cause of Action (Deliberate Indifference)</u>.

Appears to allege that in stopping his medications, rescinding the order for a pain-relieving cane, and removing all restrictions on Gaines's activities, i.e., ground floor cell, lower bunk, and weight lifting restrictions, Dr. Metts acted with deliberate indifference to Gaines' serious medical needs subjecting Gaines to cruel and unusual punishment.

The Supreme Court, holding that the infliction of unnecessary suffering on prisoners violated the Eighth Amendment, stated:

> [D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.  This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.  Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.[35]

In *Estelle* the Supreme Court distinguished "deliberate indifference to serious medical needs of prisoners," from "negligen[ce] in diagnosing or treating a medical condition," holding that only the former violates the Constitution.[36]  In short, Eighth Amendment liability requires "more than ordinary lack of due care for the prisoner's interests or safety."[37]

In determining deliberate indifference, the court scrutinizes the particular facts and looks for substantial indifference in the individual case, indicating more than mere

---

[35] *Estelle v. Gamble*, 429 U.S. 97, 104–105 (1976) (footnotes, internal quotation marks and citations omitted).

[36] *Id.* at 106.

[37] *Whitley v. Albers,* 475 U.S. 312, 319 (1986).

negligence or isolated occurrences of neglect.[38]   The Ninth Circuit has spoken to the

subject of the appropriate test under *Estelle*:

> In the Ninth Circuit, the test for deliberate indifference consists of two parts.
> First, the plaintiff must show a serious medical need by demonstrating that
> failure to treat a prisoner's condition could result in further significant injury
> or the unnecessary and wanton infliction of pain.  Second, the plaintiff must
> show the defendant's response to the need was deliberately indifferent.  This
> second prong—defendant's response to the need was deliberately
> indifferent—is satisfied by showing (a) a purposeful act or failure to respond
> to a prisoner's pain or possible medical need and (b) harm caused by the
> indifference.  Indifference may appear when prison officials deny, delay or
> intentionally interfere with medical treatment, or it may be shown by the way
> in which prison physicians provide medical care.  Yet, an inadvertent [or
> negligent] failure to provide adequate medical care alone does not state a
> claim under § 1983.  A prisoner need not show his harm was substantial;
> however, such would provide additional support for the inmate's claim that
> the defendant was deliberately indifferent to his needs.  If the harm is an
> isolated exception to the defendant's overall treatment of the prisoner [it]
> ordinarily militates against a finding of deliberate indifference.[39]

A defendant must purposely ignore or fail to respond to a prisoner's pain or medical

need in order for deliberate indifference to be established.  Where the claim is based upon

delay in providing a specified treatment, a prisoner has no claim for deliberate medical

indifference unless the delay was harmful.[40]

To make a claim, Plaintiff must show that a defendant exhibited "deliberate

indifference to serious medical needs."[41]  Such a showing is sufficient to demonstrate the

---

[38]  *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).

[39]  *Jett v. Penner*, 429 F.3d 1091, 1096 (9th Cir. 2006) (internal quotation marks and
citations omitted).

[40]  *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992), *overruled on other grounds*,
*WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

[41]  *Estelle v. Gamble*, 429 U.S. 97, 105 (1976).

"unnecessary and wanton infliction of pain proscribed by the Eighth Amendment."[42]  The Constitution "does not necessitate comfortable prisons,"[43] nor is the Eighth Amendment a mandate for "broad prison reform" or excessive federal judicial involvement.[44]  However, the Eighth Amendment does not permit inhumane conditions, and prison conditions are subject to scrutiny under its provisions.[45]

"Deliberate indifference is a high legal standard.  A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment."[46]  A mere difference of medical opinion regarding the course of medical treatment is "insufficient as a matter of law, to establish deliberate indifference."

At best, the allegations in the Third Cause of Action establish nothing more than a difference of medical opinion.  Thus, the Third Cause of Action must also be dismissed for failure to state a claim upon which relief may be granted.

Fourth Cause of Action (Assault).

The Fourth Cause of Action is predicated upon an alleged assault (stabbing) on Gaines by a fellow prisoner.  Gaines asserts two theories:  (1) that the assault was

---

[42] *Id*. at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)) (internal quotation marks and citation omitted)).

[43] *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981))

[44] *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982) (*abrogated on other grounds by Sandlin v.  O'Connor*, 515 U.S. 472 (1995)).

[45] *Farmer*, 511 U.S. at 832.

[46] *Toguchi v. Chung*, 391 F. 3d 1051, 1060 (9th Cir. 2004); *see Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002); *see also Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990) (stating that even gross negligence is insufficient to establish a constitutional violation); *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (per curiam) (noting mere indifference, medical malpractice, or negligence do not support a cause of action under the Eighth Amendment).

instigated by several of the Defendants; and (2) other Defendants denied him proper medical care.  Both theories fail.

Because the allegation that correctional officers somehow conspired with prisoners to inflict serious bodily injury or death on Gaines, if proven, could result in a criminal prosecution of the correctional officers involved, it is inherently improbable that such a conspiracy existed.  In addition to being inherently improbable, those allegations are based upon nothing more than innuendo and supposition.

With respect to the alleged denial of medical care, Gaines does not describe with particularity the nature of the wounds he suffered, the damages he incurred as a result of the alleged failure to provide medical attention to his wounds, or that he suffered any ill-effects from the lack of medical treatment.  Indeed, it is apparent from Gaines' allegations that he did not suffer any serious injury.

> 151.  Defendants Talli, Metts, Sami, and Kipps were all aware of the injuries to plaintiff, yet none of them offered any type of treatment to plaintiff, while the defendants were all aware of the plaintiff's injuries and they were all witness to the untreated wounds.  Defendants Talli, Metts, Sami, and Kipps only looked and walked away.  An officer at a later time offered plaintiff a cup to fill with water to rinse the wounds sustained in the attack.[47]

Notably absent are any allegations concerning any later treatment Gaines may or may not have received for the wounds, or any significant injury resulting from the failure to provide him with immediate medical attention.  While this Court does not condone such action by correctional officers, while it may suffice to warrant relief under applicable State law, it does not rise to the level of a constitutional violation.  Accordingly, the Fourth Cause

---

[47]  Docket 20, p. 46.

of Action will also be dismissed for failure to state a claim upon which relief may be granted.

### Fifth Cause of Action (Mental Health Misclassification).

Here Gaines alleges that by changing his diagnosis and disclosing the information contained in his mental health records to non-medical staff Defendants violated his rights under the Eighth and Fourteenth Amendments.[48]  To the extent that this cause of action is based upon the change in Gaines' diagnosis, it fails for the same reasons as did the Third Cause of Action, it is based upon a mere difference of medical opinion regarding the course of medical treatment.  To the extent it based upon the alleged disclosure of his medical information tp non-medical personnel, it fails to state a claim cognizable in this Court.[49]

Therefore, the Fifth Cause of Action must also be dismissed for failure to state a claim upon which relief may be granted.

### Sixth Cause of Action (Destruction of Property).

Alleges that Defendants maliciously destroyed his personal property.  An unauthorized intentional deprivation of property is not a violation of the Due Process Clause of the Fourteenth Amendment where the state provides a meaningful post-

---

[48]  The Court notes that the alleged improper disclosure occurred prior to September 15, 2011, and is therefore barred by the statute of limitations in any event.

[49]  The Court notes that in adding the conclusory descriptive adjectives "maliciously and sadistically" does not add any weight to this claim.

deprivation remedy for the loss.[50]  California does provide such a remedy.[51]  Accordingly, the Sixth Cause of Action will be dismissed.

Seventh Cause of Action (Deliberate Indifference).

Alleges that in mis-diagnosing and refusing to treat his severe mental health conditions Defendants were deliberately indifferent to Gaines' serious medical needs. Because it is unsupported by any competent medical evidence, this cause of action fails for the same reasons as did the Third Cause of Action,[52] and will be dismissed for failure to state a claim upon which relief may be granted.

Eighth Cause of Action – Conspiracy.

In his Eighth Cause of Action Gaines has joined several different actions by different defendants at different times alleging that acts of each were all part of some alleged grand conspiracy to deprive him of his constitutionally protected rights as alleged in the first seven causes.  As the Court pointed out in dismissing the Complaint, a plaintiff must plead the basic elements of a civil conspiracy:  an agreement and concerted action amongst the defendants in the furtherance of that agreement.[53]  As was the case in Gaines' Complaint the Second Amended Complaint, which is drafted in purely conclusory terms, falls far short of meeting this standard.  Furthermore, because as discussed above the allegation that correctional officers and medical personnel conspired with prisoners to inflict serious bodily

---

[50]  *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).

[51]  *Barnett v. Centoni*, 31 F.3d 816–17 (9th Cir. 1994) (*per curium*); *see* Cal. Gov't Code §§ 810-895 (Claims and Actions Against Public Entities and Public Employees);

[52]  The Court notes that, as with his Fifth Cause of Action, in adding the conclusory descriptive adjectives "maliciously and sadistically" does not add any weight to this claim.

[53]  *See Wasco Products, Inc. v. Southwall Technologies, Inc.*, 435 F.3d 989, 990–91 (9th Cir. 2006); *see also Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008) (noting that a bare allegation of a conspiracy is almost impossible to defend against where numerous individuals are concerned).

injury or death on Gaines, if proven, could result in a criminal prosecution of the Defendants, it is inherently improbable that such a conspiracy existed.[54]  Accordingly, the Eighth Cause of Action will also be dismissed for failure to state a claim upon which relief may be granted.

## IV.    CONCLUSION/ORDER

Because it fails to plead facts sufficient to warrant granting the relief requested, or any relief at all, the Second Amended Complaint is hereby **DISMISSED** in its entirety.

"[W]hen a district court has already granted a plaintiff leave to amend, its discretion in deciding subsequent motions to amend is particularly broad."[55]  In addition to his failure to follow the explicit instructions given, it is evident that, even if the procedural defects are cured, Gaines cannot plead a plausible cause of action against any Defendant. Consequently, dismissal is without further leave to amend.[56]

This Court, having fully considered the matter finds that reasonable jurists could not disagree with this Court's resolution of Gaines' constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further. Therefore, any appeal would be frivolous or taken in bad faith.[57]  Accordingly, Plaintiff's *in forma pauperis* status is hereby **REVOKED**.

---

[54]  The Court notes that the Complaint spans a period exceeding five years involving three separate incarcerations: twice at CSATF with an intervening incarceration at CSP, Cochran.

[55]  *See Chodos v. West Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) (citation and internal quotation marks omitted).

[56]   *See Hartman v. California Dept. of Corr. and Rehab.*, 707 F.3d 1141, 1130 (9th Cir. 2013) ("A district court may deny leave to amend when amendment would be futile."); *Lopez v. Smith*, 203 F.3d 1122, 1130–31 (9th Cir. 2000) (en banc) (explaining that leave to amend should be given unless amendment would be futile).

[57]  28 U.S.C. § 1915(a)(3); *see Hooker v. American Airlines*, 302 F.3d 1091, 1092 (9th Cir. 2002).

The Clerk of the Court is directed to enter judgment of dismissal, with prejudice, which states that the dismissal counts as a "strike" under 42 U.S.C. § 1915(g).

**IT IS SO ORDERED** this 6th day of September, 2016

S/ RALPH R. BEISTLINE
UNITED STATES DISTRICT JUDGE